# REPORTS

OF

# CASES ARGUED AND DETERIMNED

AT THE JUNE TERM, 1868.

42 509
94 503

## ROBERTSON *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Murder; jury must fix the degree of.*—The jury must ascertain, by their verdict, the degree of murder in which a defendant is guilty, and if they fail to do so, it is error for the court to pass sentence on the verdict.
2. *Witness; competency not affected by an adulterous connexion.*—Defendant being on trial for murder, a woman was offered as a witness for the State, who, on her *voir dire,* stated that she and the defendant agreed to marry; that defendant told her he could not get a license for them to marry at that time, because "all the old licenses had run out," but that "as soon as the new licenses came in" he would get a license and marry her, and upon this agreement they cohabited,—*held,* this was no marriage, but an adulterous connexion, and that the woman was a competent witness.
3. *Marriage; whether valid without license.*—Whether, under our statutes, a legal marriage can be had without a license, and without solemnization, *quere?* (BYRD, J., on this point,—*held,* that a license from a judge of probate is an essential pre-requisite to a valid marriage.)

APPEAL from the Circuit Court of Lowndes.
Heard before the Hon. GEORGE GOLDTHWAITE.

THE appellant was indicted at the spring term, 1868, of said court, for the murder of one Moses Carr, and on the

7th May, 1868, a day of said term, was tried and found guilty.

The questions of law decided in the case will be sufficiently understood from the opinion of the court.

JOHN ENOCHS, for the appellant.

JNO. W. A. SANFORD, *contra.*

A. J. WALKER, C. J.—The verdict, in this case, fails to ascertain the degree of murder in which the defendant was guilty, and the court erred in passing sentence upon the verdict. The precise question is decided in *Hall v. State,* 40 Ala.; see, also, Revised Code, § 3657 (115); *Johnson v. State,* 17 Ala. 618; *Cobia v. State,* 16 Ala. 781; *Dick v. State,* 3 Ohio, 89; *Parker v. State,* 3 Ohio, 101; *McGee v. State,* 8 Mo. 495; *State v. Upton,* 20 Mo. 397; *Kirby v. State,* 7 Yerger, 659; *Wharton's American Criminal Law,* §§ 1115, 1121.

It is ingeniously argued by the Attorney General, that the punishment prescribed by the verdict was authorized only upon the ascertainment of the defendant's guilt of murder in the first degree, and it must therefore be intended that the jury did find the degree of the offense, which justified them in the imposition of the punishment. Verdicts in cases of felony can not be helped by such intendments.—*Turner v. State,* 40 Ala. 21. But, in addition, the statute is imperative in requiring the jury to fix the degree of murder. It is a right of the accused that they should do so. That right has not been awarded to him. An error has therefore been committed, and it does not become us to withhold a reversal upon any nice speculation as to whether the accused has been injured. We can conceive, however, of injury that the defendant may have sustained, and if this were not so, we should be extremely reluctant to open a question so well and so often settled.

On the trial a woman was offered as a witness, to whose competency the accused objected, on the ground that she was his wife. The court overruled the objection, and the correctness of this ruling is assigned as error. The defendant and the witness were, it seems, colored people. The

witness, on her *voir dire*, stated that she and the defendant agreed to marry; that the defendant told her that he could not get a license for them to marry at that time, because "all the old licenses had run out," but that "as soon as the new licenses come in," he would get a license and marry her, and that upon this agreement they cohabited. The agreement to marry here had reference to the future. It was an agreement to marry at a future time upon the occurrence of an antecedent event—the procurement of a license. The cohabitation was necessarily before the occurrence upon which the agreement to marry was to be consummated. The cohabitation was, therefore, not in fulfillment of a matrimonial agreement, but in advance of an anticipated marriage. It was obviously understood to be an adulterous connexion procured, and perhaps, in the estimation of the parties, excused by the promise and prospect of a future marriage. There are many authorities that sustain the proposition, that in the absence of statutory restraints, a marriage may be had *per verba de futuro cum copula*, but this doctrine is only reasonable upon the idea, that the *copula* was *prima facie* evidence of an acceleration of the espousals. Where this idea is negatived, as in this case, to regard the marriage as consummate, would reverse the maxim, "*concensus, non concubitus, facit nuptiam.*" It would substitute the *copula* for the consent as the constituent of the marriage. There is a very extended and learned consideration of this subject and review of the authorities by Bishop, in his work on Marriage and Divorce, vol. 1, chap. xii, xiii, to which we refer. Here the very terms of the agreement exclude the idea, that the parties consented to marry until a license was obtained, and to infer the consent would be in contravention of an established fact. This we do not think would be right upon principle and policy to do.

In a dictum the learned chief justice, in *The State v. Murphy*, 6 Ala. 765, intimated that a marriage might, in this State, be consummated without license and without formal solemnization. The case now in hand does not require us to examine this subject, and we mention it merely to say, that we consider the question, whether under our statutes

a legal marriage can be had without license and without solemnization, as open and unsettled. In this case the witness and the defendant were not man and wife, and the former was a competent witness, even if a license and formal solemnization can be dispensed with. It is not necessary for us to notice any other question in the case.

Reversed and remanded.

BYRD, J.—I concur in the conclusion of the court; but I prefer to put my concurrence on the point of the competency of the witness upon other grounds. I may concede that by the common law a marriage consummated by a contract to marry in the future, and subsequent cohabitation of the parties, was valid. But I think this is changed by the Code. By section 2338 it is declared, "*no marriage shall be solemnized without a license.*" And the statute directs how the license is to be issued, and by whom. What does the statute mean by the above prohibitory language? If a marriage can be valid without a license, what is the force of such a prohibition? It may be said that it refers to the solemnization of the ceremony. Such a construction is too refined for my appreciation. Besides, it is a sacrifice of the substance to the form—of a principle to a whim. By such a construction, under § 2335 of the Code, a marriage between a white person and a negro can not be *solemnized* under the forms of the statute; they could, by contracting to marry and then cohabiting together, consummate the relation of husband and wife. For both being free and of proper age, and without any disability, would be competent to contract. It looks too much like founding so sacred a relation and contract on an adulterous connection. The Code no doubt intended to discountenance the tendencies of the age to free-loveism and mormonism. The very difficulty of proving such marriages is an encouragement to the latter, and the ease with which they may be discarded is a stimulus to the former. It is a relation which lies at the foundation of all civilized society and good government, and it should be entered into with due solemnity and with all the sanctions of the law, so far as they are imperative.

Again, the legislature has frequently legalized marriages which were valid at common law.—See *Clay's Digest*, 374, §§ 9, 10, 11; *Revised Code*, § 2350. This is persuasive to show that the legislative department never intended that a marriage should be valid without a license.

The statutes on this subject I conceive to be a system of law which was intended to regulate the forms necessary to be observed in the rites of matrimony in order to its validity. I do not say that they are all equally essential, but I do say, that in my opinion, *a license from a judge of probate* is an essential pre-requisite to a valid marriage.

That inconveniences may arise from a rigid adherence to this rule, may be true, but it will cut off a great many irregularities and wrongs which, under the indulgent usages and principles of the ancient common law, will necessarily take place, to the great detriment and shame of families. It will put an end to the private and secret marriages which are so productive of evil, and throw an obstacle in the way to the ruin of the innocent under the promise of marriage, and the idea that a cohabitation, with the promise, makes a good marriage, which is held out to the victims of the vicious and unscrupulous, to accomplish their nefarious purposes, and many other evils which are prevalent under the common law theory of marriage. In my opinion, the loose doctrine of the common law, which was more in harmony with the civilization of the middle or dark ages than with the principles of a new dispensation, should long since have been abandoned and rejected as unsuitable to the progressive refinement and morality of modern civilization. And it is gratifying to me that our statute law is so plain and explicit on this subject. Other provisions of the statute law are equally as demonstrative of this conclusion as those referred to, but I will not extend this argument.