# Levison v. The State.

### *Indictment for Murder.*

1. *Verdict; what will not sustain conviction.*—A conviction for murder can not be sustained, unless the verdict expressly finds the degree of the crime of which the defendant is found guilty ; and the rule is not varied, because the indictment charges murder by administering poison.

2. *Confessions ; admissibility of.*—Where a confession is obtained by threats or promises, subsequent confessions of the same character are not admissible, unless from length of time intervening, warning of consequences, and the like, there is reason to presume that the inducements influencing the first confession were dispelled ; but where influences to procure a confession have been unavailing, there is no rule requiring the exclusion of a subsequent confession, because such influences were employed, or the indulgence of the presumption that such influences, having no effect when employed, were the cause of a subsequent confession.

3. *Objection to evidence ; what waiver of.*—A specific objection to evidence is a waiver of all other grounds of objection, and the appellate court will consider only such objections as were made in the court below.   In this case, however, error in the verdict compelling a reversal, this court considered an objection, raised here for the first time, to the admissibility of a confession, as the question would arise again on a second trial.

4. *Confession ; when not incomplete.*—A confession is not rendered inadmissible merely because the conversation in which it occurred was interrupted.   Where the confession is full and unqualified, and all that the accused said on that subject is proved to the jury, the confession can not be excluded on the speculation that the prisoner would have said something favorable to herself, if the conversation had continued.

5. *Evidence ; what inadmissible.*—Proof of the flight of another person arrested and indicted for the same offense for which the prisoner is tried, is not admissible evidence in favor of the defendant on trial.

6. *Conduct and declarations of party not on trial ; when admissible against defendant.*—Where the confessions of the accused implicated another as her associate in crime, proof that such person, knowing of the purpose to arrest the defendant, went to her house and left without indicating any purpose to return that night, but did return in haste before the arrest was made, and finding her in bed, had a conversation with her in a whisper, during which he was heard to say, "lie still and keep your damned mouth shut," is competent evidence against the prisoner.

Appeal from Circuit Court of Bullock.

Tried before Hon. J. E. Cobb.

The appellant, Pet. Levison, was jointly indicted, together with Fred. Baldwin, Douglas Brumley and Harry Baldwin, for murdering Philip B. Baldwin by administering poison to him.   A *nol. pros.* was entered as to the defendants Brumley and Harry Baldwin, and Fred. Baldwin fled before trial. The appellant was tried at the fall term, 1875, of the circuit court, upon issue joined upon plea of not guilty.

The judgment entry recites that the jury rendered a ver-

dict as follows: "We find the defendant guilty, and assess punishment in the penitentiary for life.".

Upon this verdict the court sentenced the appellant to imprisonment in the penitentiary for the term of her natural life. She reserved a lengthy bill of exceptions, and brings the case here by appeal.

The defendant was taken into custody in December, 1874, and afterwards removed from the jail of Bullock county, on account of its unsafe condition, to that of Montgomery county, about the 23d of January, 1875. The State introduced one Sabry Stewart, a colored woman, to prove alleged confessions made by defendant to her while they were both confined in jail at Montgomery, in March, 1875. This witness stated that she had not held out any inducements, or used any threats to induce defendant to confess, but did say to her, "If I had done any thing, I would tell it." The defendant objected to evidence of such confession, on the ground that it was not freely and voluntarily made; and for the purpose of enabling the defendant to show this, the court caused the witness, Sabry, to stand aside, and heard testimony offered by the defendant to show that the confession was involuntary. The testimony on this point showed that, when defendant was arrested in the night of —— day of December, 1874, the persons in whose custody she was, endeavored to induce her to confess, stating to her that she could turn State's evidence and that they would do all they could for her. She, however, made no confession to them. While she was thus in custody, one Wiley Turner had some conversation with her, and had been at her house shortly before her arrest. It was shown by the jailor of Bullock county that while she was confined in that county he had frequent conversations with her, in all of which he sought to persuade her to make confessions; at first offering her no inducements and making no threats, but finally telling her if she would confess and tell who the guilty parties were, she could turn State's evidence and be released from prosecution and set at liberty. For some length of time he also subjected her to short and hard prison fare, but without obtaining any confession. The assistant jailor and the jailor's wife also made similar attempts to procure confessions upon like inducements, which were likewise unsuccessful. Each of these witnesses testified, however, that they told defendant to tell the truth and nothing more.

Upon this evidence, " defendant renewed her objections to allowing Sabry Stewart to testify as to said alleged confessions, but it appearing to the court that the confessions to Sabry were made two months after the unsuccessful attempts

to obtain confessions in the Bullock county jail, and at a different place, without any inducement being offered by the witness, the objection was overruled," and the witness, Sabry, permitted to testify to the alleged confessions. The substance of her testimony was, that in a conversation with defendant, while they were both prisoners in the jail at Montgomery, witness asked defendant " what she was in there for," to which she replied that they accused her of murdering Mr. Baldwin, and that " one Wiley Turner had given her a white powder to give to Mr. Baldwin, and that she put it in the pitcher of water from which he drank, and shortly afterwards he was taken ill; that at that time said Turner ran into the room and told defendant, 'if you will not tell, I will marry you, and make you as fine as any lady in the land, and give you a home in New York, Alabama, or any where else you want it,'" &c.

Defendant again moved to exclude the confession, because it did not appear to have been freely and voluntarily made. The State then introduced one Molly Norton, who had also been confined in the jail at Montgomery with defendant, and who testified that defendant told her she killed Mr. Baldwin, and that no threats were made or promises offered to her by witness to induce her to confess, but the confession came about in this wise : " Witness was sitting in the yard of the Montgomery jail crying, and defendant asked her what she was crying about, and she answered because she was in jail. Defendant then said, if that was all she would not care, and proceeded : 'I do not know that I will ever get out,' and gave as a reason that she was there for killing Mr. Baldwin. Witness asked if she did it, and she said she did, and their conversation was interrupted, and nothing more was said between them."

This confession was objected to, because not freely and voluntarily made, but the court refused to exclude it, and the defendant excepted.

The State then offered to prove by a witness that said Wiley Turner, who was at defendant's house the night she was arrested, and knew of the purpose to arrest her that night, left there before the arrest and then came back in great haste, and went to the bed where defendant was, and whispered a little while to her, but witness heard nothing distinctly except " Lie still and keep your damned mouth shut." Immediately after saying this, he went out of the house hurriedly, and came back in about an hour afterwards with the parties who arrested the defendant.

Defendant objected to this evidence, on the ground that it

was illegal and irrelevant, but the objection was overruled, the testimony admitted, and the defendant excepted.

Defendant introduced evidence that Fred. Baldwin, who was jointly indicted with her, and arrested under a capias on the indictment, had "broke jail and fled from justice."

It further appeared that the defendant was a servant in the family of the deceased, and it was her duty to wait upon the rooms and carry water; that on the night when Baldwin died there was a gathering of guests at his house to witness the marriage of a daughter, and that several of the guests were affected with symptoms of poisoning. This evidence was introduced by the defendant.

The foregoing was the substance of all the testimony.

The defendant requested the following charges in writing:

"1st. Flight in one charged with a criminal offense is competent evidence against him, and tends to establish guilt, and if the jury believe from the evidence that Fred. Baldwin, charged with the accused in this indictment, made his escape and fled the country, and there is no evidence tending to connect the accused with said Baldwin in the commission of the offense charged, the fact may be looked to to create a doubt as to defendant's guilt, and if the jury have reasonable doubt as to who is the guilty party, they must find the defendant not guilty.

"2d. If the jury believe from the evidence that the defendant came to his death by poison, and that at the same time others were poisoned, the jury may consider, in connection with the evidence, the failure upon the part of the State, if any, to account for the manner of poisoning of any other such person or persons, as a circumstance in determining whether or not there is doubt as to how the poison was administered."

The court refused each of these charges, and the defendant duly excepted.

WATTS & SONS, for appellant.

JOHN W. A. SANFORD, Attorney General, with whom was H. C. TOMPKINS, contra.

BRICKELL, C. J.—The statute has divided murder into degrees, describing particularly the constituents of the first degree, and declaring a homicide not having these constituents, and which would have been murder at common law, murder in the second degree.—R. C. § 3653. The jury determine the punishment, on conviction of either degree; the

first being punishable with death or imprisonment in the penitentiary for life ; and the second by hard labor for the county, or imprisonment in the penitentiary, for not less than ten years.—R. C. § 3654. "When the jury find the defendant guilty, under an indictment for murder, they must ascertain by their verdict whether it is murder in the first or second degree."—R. C. § 3657. The Penal Code of 1841 first introduced these provisions into the law of the State.—Clay's Dig. 412, §§ 1, 2. Since their introduction, it has uniformly been decided, that under an indictment for murder, a judgment of conviction cannot be rendered on a verdict of guilty which does not expressly find the degree of the crime.— *Cobia v. State*, 16 Ala. 781 ; *Hall v. State*, 40 Ala. 698 ; *Robertson v. State*, 42 Ala. 509 ; *Murphy & Ashford v. State*, 45 Ala. 32. In *Johnson v. State*, 17 Ala. 618, it was held the rule was not varied because the indictment charged the murder was by poisoning. We do not doubt the correctness of these decisions; they are in conformity to the imperative terms of the statute, and no arguments drawn from the objects it is supposed the statute was intended to accomplish can justify a departure from them.—Whart. Hom. p. 197, § 900 ; *People v. Caldwell*, 40 Cal. 137. The error in rendering judgment on the verdict leads necessarily to a reversal, but as the other questions which arise on the record, and which have been very fully argued by counsel, will be presented on another trial, we feel bound to consider them.

Confessions not voluntary, but induced by threats, promises, or the hope of favor, held out to one charged with a criminal offense, are not competent evidence against him. Whether the confession proposed as evidence is voluntary or the result of inducements, is a question to be determined by the court, on a just consideration of the circumstances under which it was made, and of the situation and character of the accused.—*Brister v. State*, 26 Ala. 107 ; *Aikin v. State*, 35 Ala. 399 ; *Mose v. State*, 36 Ala. 211 ; *Aaron v. State*, 37 Ala. 106 ; S. C. 39 Ala. 75 ; *King v. State*, 40 Ala. 314. The exclusion of the confession rests on its connection with the inducement; that they stand to each other in the relation of cause and effect. If it is apparent no such connection exists, there is no reason for the exclusion of the confession. *State v. Potter*, 18 Conn. 166 ; *Mose v. State*, 36 Ala. 211. In this last case, C. J. WALKER said : "The principle is, that although a threat or promise may have been made use of, the confession is to be received if it has been made under such circumstances as to create a reasonable presumption that the threat or promise had no influence, or had ceased to have influence, upon the mind of the party." It is not

necessary that a confession should be spontaneous. It is only necessary that it should be voluntary, without the appliances of hope or fear from others.—1 Green. Ev. § 220. Hence, a confession is admissible, although elicited by questions propounded to the accused, though such questions assume his guilt, (*Carroll v. State*, 23 Ala. 28) ; or, though obtained by artifice or deception, (Joy on Confessions, 42 ; *King v. State, supra*) ; or, though the accused was not warned that what he said would be used against him, or that it would be better for him to abstain from confessing.—Joy on Confessions, 45 ; *Seaborn & Jim v. State*, 20 Ala. 15. Nor will an " exhortation to tell the truth," though accompanied by the statement made by the officer having custody of the prisoner, that it would be best for him to tell the truth, exclude a confession which may follow it.—*Aaron v. State, supra ; King v. State, supra.* The theory of the exclusion of a confession is that it was extracted by promises of favor or threats of punishment. When these have not been employed the confession is admissible, on the presumption, that a person will not make an untrue statement criminating himself, and militating against his own interest.

A confession obtained by threats or promises being inadmissible, subsequent confessions of the same character are not admissible, unless from the length of time intervening, from proper warning of the consequences, or from other circumstances, there is reason to presume that the hope or fear influencing the first confession is dispelled.—Joy on Confessions, 69 ; *Mose v. State, supra.* The confessions of the accused, received in evidence, it is insisted, should have been rejected under this rule. The statement of the rule shows that it is founded on the concurrence of facts, the existence of which were disproved in this case. The facts which must concur to render the rule applicable are the several confessions, the first of which is inadmissible. The first confession is regarded as *the parent* of the succeeding confessions, and that being improperly obtained, vitiates the second, unless it appears the influence extracting the first has been removed, and all connection between the two dissevered. The rule is not that when influences to procure a confession have been unavailing, a subsequent confession will be excluded because such influences were employed ; or, that such influences having no effect when employed, will be presumed to be the cause of a subsequent confession.—*Mose v. State, supra ; State v. Potter*, 18 Conn. 166 ; *State v. Jones*, 54 Mo. 478 ; *Rex v. Gibbons*, 1 Carr. & Payne, 97. Without reciting the particular facts found in the record, it is enough to say there was not the slightest connection between the induce-

ments offered to the accused to confess (if it is admitted they were of a character to exclude any confession following them) and the confessions given in evidence. These inducements were fruitless when made, and no just presumption can be indulged that they lingered in the mind of the accused, producing confessions two months afterwards, to persons utterly unknown to those who had offered the inducements, and which she could not reasonably have supposed would ever be, nor did she desire they should be communicated to them, or to any one having authority over her prosecution, or power to aid her.

The specific and only objection taken in the court below to the admissions of the confessions as evidence, was that it did not appear they were free and voluntary. It is the settled rule of this court, that a specific objection to evidence is a waiver of all other grounds of objection—an admission that in all other respects the evidence is legal, and on error, the only inquiry is, whether the objection made ought to have been sustained.—*Walker v. Blassingame,* 17 Ala. 810. We do not feel bound, therefore, to consider whether the objection made for the first time in this court, that the confession to the witness Norton was so incomplete that it was inadmissible, is well taken or not. But as it may arise in a future trial, it is perhaps proper now to determine it. The confession is said to be incomplete, because the conversation in which it was made was interrupted. What was the cause of the interruption, whether it was the appearance of some other person, or because one or the other was called away, or by the intervention of some one in authority over them, commanding a cessation of the conversation, does not appear. Nor is the confession in itself incomplete—it is full; that the cause of the imprisonment of the accused was the killing of Mr. Baldwin, with an acknowledgment that she had killed him. Whether the accused would have extended the confession further, or if it had been extended would have qualified, or explained what she had already said, is mere matter of speculation. It is not the fragment, or a disjointed part of a conversation, which is offered in evidence, but the whole conversation—all that was said, and its exclusion is not authorized because of any supposition that if the interruption had not occurred, she would have said something possibly favorably to herself. The case of *Williams v. State,* 39 Ala. 532, rests on its own peculiar facts, and has not the least resemblance to the case at bar. The prisoner was interrupted before he had finished his statements by his master, and compelled to desist from continuing them. The rule announced in that case depends for its reasoning largely on

the now obsolete relation of master and slave, and certainly
is inapplicable to the confessions proved in this case.

There are many mere circumstances indicative of guilt in
one accused of crime, and admissible as evidence against
him, which cannot and ought not to be received when an-
other is charged with, and on trial for the offense.   It is cer-
tainly true, that a person accused of crime may show his
own innocence by proof of the guilt of another.   The evi-
dence of guilt must relate to the *res gestæ*, and not to the de-
clarations or conduct of the party on whom it is attempted
to cast suspicion, subsequent to and having no immediate
connection with the crime.   The confession of a third per-
son, not introduced as a witness, that he was the real crim-
inal, and not the accused, is rejected, from its remoteness
and want of connection with the accused, and the manifest
danger of collusion and fabrication.—1 Best. on Ev. § 91;
*Smith v. State*, 9 Ala. 990.   Flight, the demeanor when ar-
rested, stolidity or trepidation, under accusation, prevarica-
tion in answer to inquiries relating to the offense, or to his
conduct, the fabrication or suppression of evidence, or pre-
vious threats, or antecedent grudges, are all evidentiary facts
against the person to whom they are imputable, dependent
for their value on a connection with other criminating cir-
cumstances.   They are evidence against the party to whom
they are imputable, because they are his own acts or declar-
ations, and not constituting the guilty act, only pointing to
him as the guilty agent, are not evidence for or against an-
other with whom he has no connection.   The most inconclu-
sive of the criminating circumstances, that which, not com-
bined with other facts, is of the least probative force is flight.
Burrill on Cir. Ev. 469–74.   It may be attributable to fear,
or to impatience and restlessness, under the duress of im-
prisonment, or to a consciousness of guilt.   Much depends
on the character of the mind, temperament and education.
One will, with fortitude, endure imprisonment without mur-
muring, and without an effort to fly, though tortured with
the consciousness of crime; while another of a different
mental, or moral, or physical organization, conscious of in-
nocence, fretting under unaccustomed restraints, or fearful
of the issue of the events leading to his imprisonment, will
fly on the first opportunity.   Flight is of consequence, in it-
self, delusive and inconclusive as a criminating fact.   It can-
not be evidence of guilt when another is accused and on
trial.   In *Crookham v. State*, 5 West Va. 510, (S. C. 2 Green.
Crim. Law R. 671,) the evidence of the flight soon after the
homicide of a person who, just before the killing, had threat-
ened to take the life of the deceased, was offered and re-

jected as evidence for the prisoner. We are clear in the opinion the flight of another person arrested for the same offense of which the prisoner was accused, was irrelevant and should have been excluded. The charge requested, founded on it, was, therefore, properly refused.

It is often a matter of great delicacy and extreme difficulty, to determine, in a criminal cause, whether a particular fact, not bearing directly on the issue involved, can be received as evidence. The rule is clear and well defined that facts and circumstances, which, when proved, are incapable of affording any reasonable presumption or inference in regard to the material fact or inquiry involved, are not admissible as evidence. The difficulty lies in its application. A single fact, standing by itself, may seem of insignificance, having a remote, if any, connection with the material facts, yet may tend to support evidence, the competency of which is indisputable, or may form a link in a chain of circumstances amounting to conclusive proof.—*Campbell v. State*, 17 Ala. 69. The conduct or demeanor of a party at or about the time of his arrest, will be received as evidence.—*Liles v. State*, 30 Ala. 24; Roscoe's Crim. Ev. 53. Observations then made to him, relating to the offense, or to the arrest, to which he gives no answer, or an evasive reply, are also received. Much depends on the particular circumstances of each case. The confessions of the accused implicate Turner as her associate in the crime, indeed, as the most criminal agent, morally, in its commission. Evidence was offered of the fact that he had visited the accused on the night of her arrest, and had left her without indicating any purpose to return on that night; but did return in great haste before the arrest was made, and finding her in bed, had a conversation with her in a whisper, the only words of which distinguishable by the witness, were his declaration, "lie still and keep your damned mouth shut," and then left hurriedly, returning about an hour afterwards, with the officers who made the arrest. He had information of the purpose to make the arrest, before it was made; but whether he obtained it after his first and before his second visit to the accused, is not shown. If, as the confessions of the accused indicate, he was not only her associate, but the originator of the crime, naturally, on hearing of the intention to arrest her for the offense, he would seek a conversation with her before the arrest was made, and that conversation he would seek to conduct so that it could not be heard by others. The subject of the conversation would be the anticipated arrest, and entreaty, persuasion, threats or commands would be employed to keep her from purposely or by inadvertence

[Levert, Executrix, v. Read, Executor, et al.]

disclosing their mutual guilt. Considering the circumstances, we cannot say this evidence had not a relevancy to the main and material fact. If these repeated and hasty visits, and this whispered conversation, and earnest command to silence, were not caused by the anticipated arrest, and referred to any other matter than the cause of the arrest, or if the command to silence was because of an apprehension that the accused, though innocent, might unwarily involve herself by her conversations with others, the facts could have been shown, and the evidence deprived of all injurious tendency.

The second charge requested is too involved and indeterminate for us to ascertain with any certainty the proposition it is intended to assert. The court properly refused to give it.

For the error in rendering judgment on the insufficient verdict, the judgment must be reversed and the cause remanded. The prisoner will remain in custody until discharged by due course of law.