# WOOLDRIDGE v. THE STATE.

## COURT OF APPEALS, GALVESTON TERM, 1883.

*Continuance.*—The granting or refusal of an application for continuance is a matter confided to the sound discretion of the trial judge, and on even the first application is not a matter of right.

*Charge—Circumstantial Evidence.*—Where there was positive and direct testimony of defendant's guilt and the circumstantial evidence adduced was consistent with and only in corroboration of it, it was not error to refuse special instructions upon circumstantial evidence.

*Verdict—Mis-spelt Word.*—A verdict which reads: "We the jury find the defendant guilty of murder in the *fist* degree, and assess the punishment at death," is insufficient.

Appeal from Fayette county. Opinion by White, P. J. Judge Hurt, dissenting.

On the night of the 11th of August, 1882, Antone Roerich was assassinated at his home in Fayettee county. Appellant and one Nathan Stevens were jointly indicted for the murder. On the 25th of November appellant was alone placed upon trial, and the result was his conviction of murder in the first degree with the penalty assessed at death. From this judgment of conviction he appeals to this court. Several supposed errors are complained of as grounds for

a reversal of the judgment, the most important of which are :

1. That the court erred in overruling his application for a continvance.

2. Error in refusing to give in charge to the jury special instructions requested in behalf of defendant upon the law of circumstantial evidence ; and,

3. Nullity of the verdict rendered by the jury.

Under our statute now in force, the granting or refusal of an application for continuance is a mater confided to the sound discretion of the trial judge, and is no longer, as formerly, even on the first application, a matter of right. (C. C., Art. 569, sub. div. 6.) In revising the refusal of a continuance asked on account of absent witnesses, the evidence adduced at the trial is considered by this court for the purpose of determining whether the desired testimony was probably true, as well as whether it was material, if true, and the materiality of the evidence must not only be shown, but the probability of its truth must also appear before we would feel authorized to declare that the court below had abused its discretion. (Dowdy v. State, 9 Tex., Ct. of App , 292.)

Of the four witnesses, on account of whose absence the continuance in this instance was sought, one (the witness Wheeler) was not a resident of the county, and diligence is not shown to procure his attendance ; another (Josephine Wooldridge, wife of defendant,) was sent for by the court, was present at the trial, but defendant declined and refused to place her upon the stand to testify to the facts which it was alleged could be proven by her. As far as this latter witness' testimony is concerned, defendant certainly has no just ground of complaint, since he had every opportunity to avail himself of it, and did not do so. It is no reason or excuse for his action to say that he would not consent to have her testify unless the other witnesses named in his motion were also produced. And if the statement in the motion for continuance be true, defendant could have proven all the facts, which he expected the absent witness to establish, by Josephine Wooldridge, for he says : "By the witness Josephine Wooldridge, defendant expects to prove all the facts above alleged (referring to the facts which he had just stated the other witness would prove), and, further, that she (the witness) is the wife of defend-

ant, and that on the night of the alleged killing she walked from their home to the church with defendant, and that defendant carried no gun with him ; that she also walked home with defendant from church on the same night, and that he had no gun with him at all that night."

According to this statement, there was afterwards present in court a witness by whom defendant could actually have proven all the facts he wished, and expected to prove by the absent witnesses, and yet he declined to put this witness on the stand, and now asks a reversal of the case, because he was deprived of the testimony. But suppose he could not have proven by Josephine Wooldridge what he alleges he could prove by these absent witnesses, the pertinent inquiry then would be, taken in connection with the testimony adduced, is the desired testimony probably true, even if the witnesses being present should swear as indicated? We are compelled to answer the question in the negative. It is stated in the application "that all three of the absent witnesses heard the report of the gun which is alleged to have killed said Roerich, and that at the time of the discharge of said gun this defendant was present at St. Paul's Church, and engaged in conversation with said witnesses some 300 or 400 yards from the place of the shooting, and that therefore defendant could not have been the person who killed said Antone Roerich."

In the statement of facts it is shown that defendant was moderator of the church. He was looked for that night. A number of persons were present. Some four or five of those who were present at the church testified as witnesses on the trial for defendant, and whilst they all state that they saw him at the church both before and after the shooting, not a single one swears that he was there when the fatal shots were heard, nor is the evidence of any one of them inconsistent with the theory that he could and did commit the deed. On the other hand, upon his defence of *alibi*, to our minds, though negative in character, the evidence of these witnesses appears to be strongly confirmatory of his guilt. Under all the circumstances shown by the evidence before us, it is neither credibly true, nor probably true, that he was present at the church and conversing with the absent witness when the deed was committed, and so believing we cannot say that the action of the court in over-

ruling the motion for a new trial, so far as it rested upon this ground, was erroneous.

Nor did the court err in refusing to give the requested special instruction upon circumstantial evidence in charge to the jury. There could be no more positive and direct testimony than that of the murdered man's wife as to the identity of the defendant, and the fact that he fired the fatal shots which deprived her husband of his life. This was the main fact, and the circumstantial evidence adduced was consistent with and only in corroboration of it. We come now to the consideration of the objections urged to the sufficiency and validity of the verdict. It is in these words, viz.: We, the jury, find the defendant, Ben. Wooldridge, guilty of murder in the *fist* degree, and assess the punishment at death "

Instead of the word "*first*" the jury have used the word "*fist*," or in spelling the word "first" have omitted the letter "r." This is the error contended for, e. g., that the jury have not found defendant guilty of murder in the *first* degree, and that consequently the judgment rendered was not warranted, nor is it supported by the verdict. Defendant presented the insufficiency of this verdict as one of the grounds of his motion for a new trial, which was overruled. A most serious question is here presented, and no case directly in point has been found in our own, or the decisions of other courts of the country. We must determine it by a fair and proper construction of our statutes relating to the subject matter by analogies drawn from well settled principles of the law. It is to be particularly noted that here we have no case of the mis-spelling of a word. The word used is "*fist*;" is properly spelled "fist," and is a word as well defined and as well known to the English language as any other word in daily common use. It is further to be noted that this word "fist" is not, and cannot by any contortion of pronunciation be made to sound like the word "first," and consequently the well recognized doctrine of *idem sonans* is not applicable, and must be eliminated from the discussion.

Now what are the statutory and legal rules with regard to verdicts?

"A verdict is a declaration by a jury of their decision of the issues submitted to them in the case, and it must be in

writing and concurred in by each member of the jury." (C.
C. P., Art. 705.)

Three things are requisite : First, it must declare the is-
sues. Second, it must be in writing. Third, it must be
concurred in by all the jurymen.

Again, "when the jury have agreed upon a verdict, they
shall be brought into court by the proper officer, and if,
when asked, they have agreed, the verdict shall be read
aloud by the clerk, and if in proper form and no juror dis-
sents therefrom, and neither party requests to have the jury
polled, the verdict shall be entered upon the minutes of the
court. (C. C. P., Art. 710.)

"The verdict in every criminal case must be general ; when
there are special pleas upon which the jury are to find, they
must say in their verdict that the matters alleged in such
pleas are true or untrue. Where the plea is not guilty they
must find that the defendant is either "guilty" or "not
guilty," and in addition thereto they shall assess the
punishment in all cases where the same is not absolutely
fixed by law, to some particular penalty," (C. C. P., Art.
712.)

"When a prosecution is for an offence consisting of dif-
ferent degrees, the jury may find the defendant not guilty of
the higher charge (naming it), but guilty of any degree in-
ferior to that charged in the indictment or information."
(C. C. P.. Art. 713.)

These are the general statutory rules with regard to ver-
dicts in all criminal cases of whatsoever character. As seen,
it is expressly declared that "the verdict in every criminal
case must be general." What is meant by this? Simply
that the verdict must find generally that defendant is
"guilty" or "not guilty." Every verdict must ascertain
and declare one or the other of these general issues—issues
general, because involved in all criminal cases. Beyond
this general feature of the verdict in each particular case
the evidence may be said to be *quasi* special, to the extent
that it declares the special plea of defendant (when inter-
posed) "true" or "untrue," whenever it assesses a punish-
ment, or in a prosecution for an offense consisting of differ-
ent degrees where it acquits of the higher, and finds an
inferior degree.

But with regard to these general verdicts, and as appli-

cable indiscriminately to all criminal cases, except murder (as we propose hereafter to show), certain rules of construction to test their validity have been adopted and settled by the courts. As for instance, that neither bad spelling nor ungrammatical findings of a jury will vitiate a verdict when the sense is clear." [Koontz v. State, 41 Tex., 570; Haney v. State, 2 Ct. App., 504; Krebs v. State, 3 Ct. App., 349; Taylor v. State, 5 Ct. App., 569; McCoy v. State, 7 Ct. App., 379.] Yet in these cases if the verdict *is unintelligible* it will not be permitted to stand. *Ib.* Other rules are that in construing verdicts the object is to get at the meaning of the jury; that verdicts are to have a reasonable intendment and to have a reasonable construction. They are not to be avoided unless from necessity originating in doubt of their import or immateriality of the issue found or of their manifest tendency to work injustice. And it is moreover said that a verdict is sufficient when the jury have clearly expressed an intention to find the accused guilty of the crime charged in the indictment, and to assess his punishment within the terms of the law. And so a verdict is sufficient if the judgment rendered upon it can be plead in bar of another prosecution for the same offence. (Lindsey v. State, 1 Ct. App., 327; Williams v. State, 5 Ct. App., 226; Chester v. State, 1 Ct. App., 703; Bland v. State, 4 Ct. App., 15; McMillan v. State, 7 Ct. App., 100; 1 Bish. Crim. Pro., Sec. 1005). These rules are all well settled, and so far as they apply to criminal cases generally we will not pretend to controvert or deny them. As said above, however, every verdict in all criminal prosecutions must to some extent be a special finding. Suppose special pleas for instance have been interposed, and the jury, though finding the defendant guilty, have failed to find the special plea to be "true or untrue," would the verdict be sufficient? Could and would the court be authorized to infer and conclude that they intended by finding him guilty, to find, and that the verdict could only be reasonably construed to mean, that they must have found the special plea was untrue, else they never could have found him guilty? By no means could such inference or intendment be indulged. Why? Because the statute is imperative that the verdict must say that the matters alleged in the plea are either "true" or "untrue." (C.

C. P., Art. 712; Deaton v. State, 44 Texas, 446; Taylor v. State, 4 Ct. App., 40; Brown v. State, 7 Ct. App., 619.) Or, suppose the jury should fail to impose the fine or assess the penalty where not absolutely fixed by law, would any court be authorized or warranted in holding the verdict sufficient and in supplying the deficiency and awarding a punishment commensurate with the finding? We are apprised of no such authority derivable from our law. On the other hand such verdict would manifestly be insufficient under our laws to support a judgment imposing a fine or inflicting a punishment. Such a verdict would, in fact, be but a dead letter, a nullity to which nothing could give force or vitality.

So then, it appears that with regard to misdemeanors and ordinary felonies there are certain matters which the verdict must also specifically declare, and which, if not declared, cannot be cured by intendment, inference or necessary deduction. And it will be seen that these matters which are incurable, if not found and incapable of explanation, if not certainly and explicitly found, are all those which by law are specifically and exclusively confided to the jury, and to them alone, and in so far as they are thus confided the verdict will be, and must be treated as special with reference to them.

Now let us see what differences, if any, exist in the rules above noted and those applicable to murder cases. At the very outset of the investigation we are met with the statute which declares that "if the jury shall find any person guilty of murder they shall also find by their verdict whether it is of the first or second degree, and if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty, and in either case they shall also find the punishment." (P. C., Art. 607.)

Language cannot well be stronger or more imperative. "They shall also find by their verdict whether it (the murder) is of the first or second degree." In construing this statute the leading case decided by our supreme court is Buster v. State, 42 Tex., 315, wherein the verdict was: "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment to be hung by the neck until dead." Moore, J., delivering the opinion of the

court, said : "It must clearly appear from the verdict not only that there is no conflict in the finding of the jury on the issue of the guilt and the assessment of the penalty, but their determination in the one must be in harmony with and supported by that in the other. To support the judgment the court must be able to see from the verdict of "guilty" returned by the jury that it authorizes and requires the assessment of a penalty affixed by law, or that the penalty assessed by the jury is warranted by law. And also that the jury are not mistaken in the character or degree of the offense of which they have, in fact, found the defendant guilty, and imposed a penalty not affixed to it by law. How can the court know this unless the verdict finds the offense, or its degree, as well as the penalty? It is but arguing in a circle to say the jury have found the defendant guilty of murder in the first degree because they have fixed the penalty of death ; and that they were warranted in assessing the punishment of death because they found him guilty of murder in that degree. * * * Unless the defendant is found guilty of murder in the first degree the court, as we have said, can not say they have assessed a penalty not warranted. To guard against the possibility of such a result, and to prevent the commutation by juries of the penalties fixed by law, had, no doubt, great force in inducing the legislature to require juries to find the degree of the offense in their verdicts, as well as assess the penalty in those cases in which this duty is confided to them. But whatever may have been the motive for its enactment, thus it is plainly written in the code, and until altered and repealed, it is evidently the duty of the court to observe and enforce it. All the authorities in our state (except Holland v. State, 38 Tex., 474, which has been overruled,) hold, as in Buster's case, that in a murder trial the verdict of conviction must specify the degree. (Clark's Crim. Law, p. 214. *Note verdict.*)

In all the other States where the statute requires that the verdict shall find the degree in murder cases, (with the exception of New York alone perhaps), a similar construction has been adopted to that enunciated in Buster's case, as above quoted. Mr. Bishop says : "The view sustained by most of the authorities, and probably best in accord with the reason of the thing, is that the legislature meant by this

provision to make sure of the jury's taking into their special consideration the distinguishing features of the degrees, and passing thereon. Hence, this provision is in the full sense mandatory, and unless they find the degree in a manner patent on the face of the verdict without help from the particular terms of the indictment, it is void. No judgment can be rendered thereon, but a second trial must be ordered. (Bish. Crim. Pro., Sec. 595, and note with authorities cited.)

Our conclusion from these authorities is that in murder cases the jury are absolutely required to find the degree, if they ascertain the accused to be guilty, and that in so far as finding the degree is concerned, the verdict is special in its nature as contradistinguished from the rules governing and controlling general verdicts. The characteristic distinction and difference between these two classes of verdicts may be concisely stated thus, viz: A general verdict is so called because the whole matter in issue is found generally; a special verdict is so called because some matter of fact is thereby found specially. (10 Bac. Abr., 308-9). The degree, that is the specific degree, is a matter of fact specially required in murder verdicts.

In the State v. Belk, (76 N. C., 10), it is said: "It is familiar law that nothing can be added to a special verdict by inference. If it omits to set forth any fact essential to constitute the offence charged it is defective."

In the State v. Blue, (84 N. C., 807), it is said: "In finding a special verdict the facts should be stated fully and explicitly, and the omission of any fact necessary to constitute the offence is fatal. The practice is when the verdict is insufficient, insensible, or in violent antagonism to the evidence, to set it aside and grant a new trial." (Citing 3 Whart, Cr. L., Sec. 3188; State v. Wallace, 3 Ired., 195; State v. Lowry, 74 N. C., 121.)

In the State v. Custer, (65 N. C., 339), it is said: "In a special verdict we are not at liberty to infer anything not directly found."

In the State v. Curtis, (71 N. C., 56), it is said: "In Hawkins' Pleas of the Crown, vol. 2, p. 622, one of his twelve points said to be settled is as follows · 'That the court judging upon a special verdict is confined to the facts expressly found, and can not supply the want thereof, as to any material part thereof, by an argument or implication

from what is expressly found.     *     *     *     In Hawkins' Pleas of the Crown, p. 622, note 2, it is said : 'If the verdict do not sufficiently ascertain the fact a *venire de novo* ought to issue,' and so are other authorities.' "    (S. C. 2 Crim. L. Repts.; [Green], 748.)

In Levison v. The State, (54 Ala., 520) it is said : "It has been uniformly decided that under an indictment for murder a judgment of conviction cannot be rendered on a verdict of guilty which does not expressly find the degree of the crime. (16 Ala., 781; 40 Ala , 698 ; 42 Ala., 509 ; 35 Ala., 52.]

In Johnson v. State, (17 Ala., 618), it was held the rule was not varied, because the indictment charged the murder was by poisoning. We do not doubt the correctness of these decisions; they are in conformity to the imperative terms of the statute, and no arguments drawn from the objects it is supposed the statute was intended to accomplish can justify a departure from them. (Citing Whart. Hom., p. 187 ; People v. Caldwell, 40 Calnf, 137.)

In Clay v. State, (43 Ala., 350), it was held "that a special verdict cannot be aided by intendment or by reference to any extrinsic fact appearing in the record. In such a case the court should arrest the judgment on motion of the accused, and order a *venire facias de novo* to be awarded."

The same court, in Weatherford v. State, says : "But why speculate about this matter ! The wiser and safer course is to do just what the law requires, and to do it in the way the law requires. We have determined at this term in the case of Edgar v. State, a case very like this, that the jury must by their verdict determine both the character and the extent of the punishment." (43 Ala., 319. See also 42 Ala., 509.)

When we apply these plain and well settled rules to the verdict before us, what is the inevitable conclusion which forces itself upon us as to its sufficiency, measured by analogy with these standards of the law? Have the jury found defendant guilty of murder in the *first* degree? To enable us to so hold, we must strike from the verdict a word which they have plainly spelled—a word in every day use in our language—and substitute in its place another and entirely different word, which we only infer they must have intended instead of the one they have used. Can we do

this! If so, then we can take the same liberty with any other word used. If courts can be allowed to indulge in such inferences and intendments in cases involving the life and liberty of the citizen, then why have the inestimable right of trial by jury at all? If the court can substitute a verdict which the jury have not found, or find one, when they have found none at all, then why have a jury? If the jury are required to declare the issues found in their verdict, then, unless the issues are found by them, the verdict is not theirs. There must be no doubt to be supplied by mere intendment or inference when the life of a human being is dependent upon it. This court will not assume such responsibility whilst the law fixes the determination of the issue alone in the breasts and consciences of twelve jurymen of the country. We may be satisfied of defendant's guilt of murder in the first degree, and we may be satisfied the jury so intended to find, but until they have so expressly found we cannot give our sanction that human life shall be taken whilst there is any uncertainty with regard to it. The jury have not expressly found it in this case. Their verdict is not only uncertain, but unintelligible and senseless. Even *idem sonans* will not aid it. It finds defendant simply guilty without finding the degree, and such a verdict, by all the authorities, is held *insufficient.*

But it may be said the verdict ought to stand, because when the jury brought and returned it into court it was evidently read "*first degree*" by the clerk, and assented to by the jury as thus read.

It seems they have some such rule of receiving and construing and doctering up written verdicts over in Louisiana, but the reason why they assume such authority in that state is stated in the case of the State v. Ross. (32 La. Ann., 854.) In that case it was held that the verdict of the jury is not illegal and null, because written "guilty without capitel parnish" when read aloud and distinctly announced by the clerk as "guilty without capital punishment." Besides, the law does not require even in cases of capital punishment that the jury thould reduce their verdict to writing. Here, as we have seen, the verdict must be in writing, and the Louisiana rule cannot be invoked.

In conclusion, we hold that the verdict in this case is a nullity—the jury have not found the degree of murder of

which defendant was guilty. This the law requires they shall do.

*If defendant is to hang, let him hang according to law!*

Passing upon a defective verdict of similar character the supreme court of California, in the People v. Ah Gow, says: "It is difficult to find any justification or excuse for the entry of such a verdict. The court may in any case instruct the jury as to the form of their verdict; and if it appears from their verdict as first returned that they do not know the proper form, it is the duty of the court to instruct them in that regard, and direct them to return the verdict in such form that the judgment of the law may thereupon be pronounced.

Mr. Bishop says: "It seems quite plain that in every case of a verdict rendered, the judge or prosecuting officer, or both, should look after its form, and its substance, so far as to prevent a doubtful or insufficient finding from passing into the records of the court to create embarrassment afterward, and perhaps the necessity of a new trial. The want of precaution in that matter has led to many adjudications for which the occasion ought never to have been furnished." (2 Bish. Cr. Pro., Sec. 831; 53 Cal., 627.)

Because the verdict in this case is insufficient, and does not support the judgment rendered, the judgment is remanded for a new trial. Reversed and remanded.