## HALL *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Murder ; sufficiency of verdict.*—Under an indictment for murder, a judgment of conviction cannot be rendered on a verdict of guilty which does not find the degree of the crime.

2. *Personal presence of prisoner in court during preliminary proceedings.* In a case of felony, it is the safer and better practice to have the prisoner personally present in court, when the order is made setting a day for his trial, and prescribing the number of jurors to be summoned.

3. *Non-residence of persons summoned as jurors, good cause of challenge, but no objection to venire.*—The fact that some of the persons specially summoned as jurors in a capital case are not residents of the county, constitutes a good cause of challenge by either party, (Penal Code, § 628,) but does not give the prisoner a right to have the whole *venire* set aside.

4. *Admissibility of defendant's conduct and declarations as evidence.*—The conduct and declarations of the prisoner, shortly after the commission of the homicide with which he is charged, while they may be competent evidence against him, are not admissible evidence in his favor.

5. *To what witness may testify.*—The *supposition* of a witness, as to the whereabouts of another person at a particular time, is not competent evidence.

6. *Cross-examination of witness.*—On the cross-examination of a witness, for the purpose of testing his correctness, fairness, or credibility, much must be left to the enlightened discretion of the presiding judge.

7. *Relevancy of evidence showing probable cause for homicide.*—Where a man is indicted for the murder of his wife, proof of a criminal intimacy between him and another woman, at the time of the commission of the offense, is admissible against him.

8. *Examination of witness as to matters tending to criminate or degrade him.*—A witness is not bound to answer questions as to matters which may criminate him; but this rule does not extend to matters which only tend to degrade or bring shame on him.

9. *Charge as to constituents of murder.*—A charge, instructing the jury that, " if the deceased was found dead in her bed, with her throat cut, they would be authorized to find the existence of all the legal requisites of murder in the first degree," is erroneous, because it excludes from their consideration the questions, whether the death was the result of suicide, and whether it resulted from a conflict which would reduce the degree of the homicide.

Hall v. The State.

10. *Weight of circumstantial evidence.*—Where circumstantial evidence is such as to produce in the minds of the jury, beyond a reasonable doubt, a conviction of the defendant's guilt, it is as much their duty to find a verdict of guilty, as if the evidence were positive and direct

11. *Proof of prisoner's good character; effect of.*—As to the consideration to be given to proof of the prisoner's previous good character, in a criminal case, the correct rule is laid down in the case of *Felix v. The State,* 18 Ala. 720; that is, that such evidence is admissible and competent, not only where a doubt exists on the other proof in the case, but even to generate a doubt as to his guilt.

12. *Charge on circumstantial evidence.*—A charge to the jury, in these words: " If there is evidence tending to show that the prisoner is guilty of the offense charged in the indictment, and an absence of proof or suspicion of any other guilty agent, the absence of such proof is a circumstance to be considered by the jury as evidence against him,"—is not erroneous.

FROM the Circuit Court of Cherokee.
Tried before the Hon. WM. J. HARALSON.

THE prisoner in this case, William Hall, was indicted at the November term, 1865, for the murder of his wife, Mrs. Margaret Hall ; and was tried, on issue joined on the plea of not guilty, at the May term, 1867. On the 30th April, 1867, as a minute-entry in the record shows, a day was set for the trial, and the sheriff was ordered to summon a special *venire* for the trial; and it was further ordered, " that a copy of the indictment, as well as a list of the jury, be served on the defendant, at least one entire day before the trial"; but the record does not show that the defendant was personally present in court when this order was made.

" On the trial," as the bill of exceptions states, " the State being announced ready for trial, the defendant objected to being put on his trial, because the list of jurors served on his counsel did not contain the number of resident citizens of the county required by law and the order of the court, and moved the court to quash the *venire* for that reason ; and, in support of his objection and motion, made proof to the court, that three of the persons named in the *venire* and summoned, to-wit, Josiah Brock, Edmund Coffee, and J. L. Cunningham, were at the time of the trial, and at the time they were summoned as jurors in

this case, residents of the county of Baine. The court overruled the objection, and the defendant excepted. The solicitor for the State proposed, that, with the defendant's consent, the names of said three jurors should be withdrawn, and that the sheriff should summon, in their stead, three other jurors, residents of Cherokee county; which offer was not accepted by the defendant." During the organization of the jury, the names of said Cunningham and Brock were drawn as jurors; but, it being shown that they were non-residents of the county, they were challenged for cause by the State, and were excluded; to which the defendant excepted.

" George Cahoon, a witness for the State, was then examined, who testified, among other things, that on a certain night, about nine o'clock as he supposed, after he had gone to sleep, at his mother's house, from seventy to ninety yards from the defendant's residence, he was wakened by the defendant, who called him up; that he got up, and went out, and found the defendant about ten steps from the house; that the defendant told him his wife was dead—that he had gone out to watch his melon patch, and was gone about an hour and a half, and found his wife, when he came back, dead in bed, with her throat cut; that the defendant seemed to be crying; that he (witness) went with defendant to his house, and found his wife lying in bed, dead, and with her throat cut; that he went, at the defendant's request, for the defendant's sister, who was living with the defendant, but was absent that night about a mile or more from the house; and that he returned with her about an hour and a half afterwards. The defendant then offered to prove, on cross-examination of said witness, his conduct and statements when he met his sister, on the return of said witness with her. On objection by the State, the court refused to allow the proof to be made, and the defendant excepted. Said witness testified, also, that, at the defendant's request, some negro houses near by were searched, with a view to discover the murderer; that, on said search, two negro men, Herod and Isaac by name, who did not live there, were found at said cabins, besides the families living there; that Herod seemed alarmed, and

asked what was the matter, but was told nothing, and that Herod left the neighborhood immediately afterwards. On re-examination by the State, in answer to the question, where is Herod, said witness answered, that he was at the iron-works; and on question by the defendant's counsel, as to how he knew it, he said that he supposed he was there; to which the defendant objected, and excepted to the overruling of his objection.

"On cross-examination of a witness for the State, who said that he was about the defendant's house a good deal, the defendant proved, that his character was that of a kind and affectionate husband to his wife, and that he always treated his wife kindly; and said witness testified, on re-examination by the State, that the defendant's kindness to his wife was just like that of other husbands in the neighborhood. The defendant then asked said witness, if he knew of any other husband in the neighborhood who milked the cows for his wife. The court sustained an objection to this question, and the defendant excepted.

"In rebuttal of the evidence of good character introduced by the defendant, the State offered to prove acts of intimacy between him and one Mary Taylor, a widow woman; to which the defendant objected, but the court overruled the objection. The witness testified, that he saw the defendant and said Mary Taylor, three or four weeks before the death of the defendant's wife, walking together, with their arms around each other, and going towards a field where they were raising a crop, to get horses, as he supposed, to go to plowing; and that they separated on seeing him. Defendant excepted. Other acts of intimacy were proved; to the introduction of which, each and all, the defendant objected and excepted.

"Mary Taylor, a witness for the State, was asked by the solicitor, if at any time, during the year 1865, the defendant made any professions of love, affection, or attachment to her, at what time, and what they were; to which question the defendant objected, and reserved an exception to the overruling of his objection. The witness answered, that directly after she moved there, to a house from seventy to ninety yards from the defendant's, she can not tell what

he said. The prosecuting attorney then told her, if she could not give his language, to give the substance of what he said. In answer to this, and repeated questions by the prosecuting attorney, the witness answered, 'He was always talking about me, what a good-looking woman I was; and said he thought more of me than any person in the world.' To each of these questions and answers the defendant objected; which objections were overruled by the court, and the defendant excepted.

"When said witness was turned over for cross-examination, she was instructed by the court, at her own instance, that she was not bound to answer any question that would criminate or put her to shame; to which instructions the defendant objected and excepted. Said witness was asked, in relation to her answer to direct examination, what it was that her mother and brother had said to her; to which she answered, 'They did not say anything, only the fix I was in by him.' Being then asked, what was that fix, the court told her, under the former instructions, that she could answer the question or not as she pleased; and .the witness answered, that she did not wish to state; to which the defendant objected and excepted.

"The State introduced evidence tending to show, that said Mary Taylor was pregnant by the defendant at the death of his wife, and that they were much attached to each other; that her mother and brother were offended with her, and threatened that she must leave home on account of her situation; that the defendant had promised to take her and leave the county in the fall; that, on the morning before the killing of the deceased, she told the defendant of the dissatisfaction of her mother and brother with her, and that the defendant then promised, if something did not happen that he got *shet* of his wife, he would take her and leave the county in the fall; that she told him 'nothing could happen, unless murder, or something of that sort'; and that he replied, 'she did not know what could take place'.

"The court charged the jury, in writing, as follows: 'The defendant is indicted for the murder of his wife. By our statute, murder is defined as follows,' quoting section 3080

Hall v. The State.

of the Code. 'If, however, in this case, you find from the evidence that the deceased was found in her bed, in her own house, with her throat cut, and another wound inflicted on her person, you would be authorized to find that all of the necessary and legal requisites which are required to constitute the crime of murder exist, and that the perpetrator would be guilty of murder in the first degree. Your first inquiry, then, will be directed, under the tesstimony, to the question whether the defendant is guilty as charged in the indictment. The law presumes every man innocent; but that presumption may be overcome by proof; and that proof may be made, and that presumption overcome, either by positive and direct, or by circumstantial testimony. You are as much authorized, under the law, to convict or acquit upon circumstantial, as upon direct or positive testimony, the circumstances being satisfactory to you. A well connected chain of circumstances may be as fully and as completely satisfactory of the truth or falsity of any given proposition, as positive or direct testimony. In reconciling any seeming conflict which you may meet in this investigation, it is your duty to make all of the witnesses speak the truth, if you can. If, however, you can not reconcile it, you will then look to the interest, connection, and feeling of relationship on the one hand, and malice on the other, or bias, or the manner or demeanor of the witness who testifies before you; and to accredit or discredit such witness or witnesses, as you may deem worthy or unworthy of credit. The credibility of a witness may be attacked by contradicting him upon proper predicates laid, and such attack may be successful or not, in proportion to the number and credibility of the witnesses introduced for such purpose. But witnesses so attacked may sustain, and even strengthen their credibility, by the introduction of witnesses to character, just in proportion to the number and credibility of such witnesses, to be by you determined under the rules of evidence given you by the court. The burden of proof is cast upon the State; that is, the State must fully satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant, as charged in the bill of indictment. The declarations of a party, when given in evidence, are all to be

taken together, and so considered by the jury, and be received or rejected as the jury may believe or disbelieve any of the statements. You may, finally, examine, weigh, and compare all the testimony in this case, calmly, carefully, and solemnly, in view of its vast importance as well to the State as to the defendant at the bar. If, from such examination, you are satisfied, beyond a reasonable doubt, (which doubt must arise from the testimony, and not from any feeling or bias outside thereof,) of the guilt of defendant as charged, you will so find in your verdict. The defendant, however, puts his good character in issue, and insists that it is good. This he has a right to do. It is with you to say, from the testimony, whether such character is good or not, and give the defendant the benefit of it, as hereinafter charged. Character is no excuse, when the crime is fully proved; but, if you have a doubt, under the rule laid down, before and after a careful examination of all the facts, the good character found may be considered, as matter of defense, to decide or to generate a doubt in the minds of the jury, for the benefit of the defendant. If, from the testimony, you find the defendant guilty as charged, you will say by your verdict whether he shall suffer death or imprisonment in the penitentiary for life. If, however, you find from the testimony that the defendant is not guilty, you will by your verdict say, 'We, the jury, find the defendant not guilty.' In either event, when decided, return your verdict into court."

"The court charged the jury, at the instance of the counsel for the State, that if there was evidence tending to show that the defendant was guilty of the offense charged, and an absence of proof or suspicion of any other guilty agent, the absence of such proof was a circumstance to be considered by the jury as evidence against the defendant.

"The defendant excepted to the first charge given by the court at the request of the State," and then requested several written charges, all of which the court gave except the fourth; which was as follows: "4. A conviction of felony can not be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such cor-

roborative evidence, if it merely shows the commission of the offense, or the circumstances thereof, is not sufficient." The defendant excepted to the refusal of this charge.

The jury returned a verdict of guilty, but did not specify the degree of the offense, and sentenced the defendant to imprisonment in the penitentiary for life.

M. J. TURNLEY, THOS. B. COOPER, J. B. WALDEN, and RICE, SEMPLE & GOLDTHWAITE, for the prisoner.

JOHN W. A. SANFORD, Attorney-General, contra.

A. J. WALKER, C. J.,—1. The verdict in this case was defective, and could not be the legal predicate of a sentence, because it does not specify the degree of murder of which the accused was guilty.—Johnson v. State, 17 Ala. 618; Cobia v. State, 16 Ala. 781. For the error of rendering judgment on the insufficient verdict, there must be a reversal; and we shall proceed to announce our opinion as to the material questions of law presented by the bill of exceptions, for the guidance of the court on another trial.

2. Without deciding that the personal presence of the prisoner, when a day was set for trial, and the number of jurors prescribed, was indispensable, we express the opinion, that it is the safer and better course to have the prisoner in court when such orders are made, and that the record should so affirm.—1 Bishop on Criminal Procedure, §§ 682-6; Henry v. State, 33 Ala. 389.

3. If the accused was in actual confinement, the law requires that a copy of the indictment, and a list of the jurors, should be delivered to him, at least one entire day before the day appointed for the trial.—Penal Code, § 619. That any of the jurors were incompetent, because they were not residents of the county, was a legal cause of challenge by either party; but we do not think that the summoning, through inadvertence, of those non-residents of the county, gave to the defendant a right to demand of the court, beyond the control of its discretion, that the entire list should be set aside.—Bill v. The State, 29 Ala. 34, and authorities cited in the opinion; Penal Code, § 628; McCarty v. The State, 26 Miss. 299.

4. The court committed no error in refusing to permit the prisoner to prove his conduct and statements upon the occasion of his meeting his sister, on her arrival with the messenger who had been sent for her. We declare the inadmissibility of such evidence, on the ground stated in *Campbell v. State*, 23 Ala. 44, 79. See, also, *Johnson v. State*, 17 Ala. 618.

5. The *supposition* of the witness, that the negro Herod was at work at the iron-works, was not evidence.

6. The question of the prisoner, as to husbands in the neighborhood milking cows for their wives, was altogether irrelevant to the issue. It would only be admissible in cross-examination, for the purpose of testing the correctness, fairness, and credibility of the witness ; and we think that the extent to which such questions should be allowed, for such a purpose, must be left to the enlightened discretion of the presiding judge.—1 Greenleaf's Ev. § 449.

7–8. It was permissible for the State to prove an improper intimacy between the defendant and a woman other than his wife.—*Johnson v. State*, 17 Ala. 618 ; *State v. Watkins*, 9 Conn. 47 ; Wharton's Amer. Crim. Law, § 639. Upon the cross-examination of the witness by whom this proof was made, the accused was not legally restricted from propounding questions which tended to degrade or bring shame on the witness. The restriction of the rule relates to questions, the answers to which may criminate the witness.—1 Greenleaf on Ev. § 454.

9. The court charged the jury, in effect, that if they found, from the evidence, that the deceased was found in her bed, in her own house, with her throat cut, and another wound inflicted on her person, they would be *authorized* to find all the requisites of the crime of murder in the first degree. This charge was erroneous, because it excluded from the jury the consideration of the questions, whether the death was the result of suicide, and whether it had not resulted from a conflict which would reduce the crime to a lower grade than murder in the first degeee.

10. We think the charge as to the effect of circumstantial evidence was correct. If circumstantial evidence is such as to produce a conviction of guilt upon the juror's

Hall v. The State.

mind, beyond a reasonable doubt, it is as much his duty to find a verdict of guilty, as if the evidence had been positive and direct.

11. The benefit of a good character to a defendant is not restricted to cases where a doubt of the defendant's guilt may exist. The correct rule, as to the consideration to be given to the good character of the accused in a criminal case, is laid down in *Felix v. State*, 18 Ala. 720. See, also, *Rosenbaum v. State*, 33 Ala. 354.

12. We do not think there was any error in the charge, that the absence of " proof" of any other guilty agent, was a circumstance to be considered by the jury, as evidence " against the defendant." We think that the phraseology selected by the court puts the point in a strong light against the defendant. The word " proof " is sometimes used in a sense, which, if accepted by the jury as having been intended by the court, might have misled them to the prejudice of the defendant. The better word, we think, would have been " evidence." Peradventure, there might have been evidence of some other guilty agent, strong enough to generate a doubt of the defendant's guilt, and yet not strong enough to amount to " proof ", when used in the sense of evidence of that degree which convinces the mind of the certainty of a fact. Proof, however, is often used as the synonym of evidence. The charge was, therefore, only objectionable for its tendency to mislead ; and it was for the defendant to request an explanation, which would no doubt have been cheerfully given.

When a homicide has been committed, and the circumstances tend to show that the accused was the perpetrator, then the absence of evidence of any other guilty agent is a circumstance which may be weighed and considered as evidence against the accused, upon the question, *whether he committed the homicide*. This is what we understand was intended to be asserted by the charge, and what was most probably understood to have been asserted by it. The charge, being given in the hurry of the occasion, omits to designate in terms the question upon which the absence of testimony as to the guilt of some other person would be evidence against the accused. In that particular, it might be im-

proved in clearness and precision, and more satisfactorily freed from liability to mislead the jury. There are questions in the case upon which the absence of such testimony would not be evidence against the defendant. For example, it was incumbent upon the jury to ascertain how the death of the decedent was caused ; whether by violence inflicted by her own hand, or by the hands of another; and also to ascertain, if they found the accused to be the perpetrator, in what degree he was guilty.—Wills on Cir. Ev. pp. 202–7; 1 Greenleaf on Ev. p. 18, § 13a; Starkie on Ev. part 3, § 77. The weight of the absence of such evidence is increased, by the probability that, if any other person had perpetratrated the deed, there would have been discoverable traces of it. " In a criminal case, where all the circumstances of time, place, motive, means, opportunity, and conduct, concur in pointing out the accused as the perpetrator of an act of violence, the force of such circumstantial evidence is materially strengthened by the total absence of any trace or vestige of another agent, although, had any other existed, he must have been connected with the perpetration of the crime by motive, means, and opportunity, and by circumstances necessarily accompanying such acts which usually leave manifest traces behind them."—Starkie on Evidence, part 3, § 71.

It is not clear that the bill of exceptions shows, with sufficient certainty, that the charges in writing given by the court were excepted to. Without consideration of that question, we have presented our view of the law applicable, so far as we deemed necessary for the guidance of the court on another trial.

As all the evidence is not before us, we are not able to decide certainly whether the charge asked, as to a conviction on the testimony of an accomplice, was abstract, and properly refused on that ground. It but enunciates the law, as laid down in section 641 of the Penal Code, and should have been given, if not abstract.

The judgment of the court below is reversed, and the cause remanded ; but the prisoner must remain in custody until discharged by due course of law.