# Drake v. The State.                    .

### Indictment for Carnal Knowledge of Female Child.

1. *Peremptory challenge of juror.* — In a criminal case, the prisoner's right to challenge a juror peremptorily, if not waived, is not lost until the juror is sworn, or until the oath is tendered to him ; and a waiver of the right will not be implied, especially in a case of felony, because the prisoner, after twelve jurors had been drawn, and had taken their seats in the jury box, and the places of two who were challenged had been filled, being asked by the court, "if he was now satisfied," replied, "I have nothing to say at present," and did not object to any of them until after some had been sworn, when he challenged one of the others, who was rising to take the oath.

2. *Examination of witness as to character.* — A witness in a criminal case, having testified that he is acquainted with the prisoner's general character, may be asked, "What is it?" and it is error to refuse to allow the question, because the prisoner declines to modify it at the suggestion of the court, so as to "ask whether it is good or bad."

3. *Proof of character.* — It is the settled doctrine of this court, that proof of the prisoner's previous good character is admissible, not only where a doubt exists on the other proof, but to generate a doubt of his guilt.[1]

4. *Abstract charge.* — There is no error in refusing an abstract charge, although it may assert a correct legal proposition.

From the Circuit Court of Hale.
Tried before the Hon. M. J. SAFFOLD.

GARRETT & WALKER, for the prisoner, cited the following cases : 1. As to the right of challenge at any time before the juror is sworn, *Bell & Murray* v. *The State*, 48 Ala. 684 ; *Hooker* v. *The State*, 4 Ohio, 350 ; *State* v. *Cameron*, 2 Chandler, 181 ; *People* v. *Bodine*, 1 Denio, 310 ; *People* v. *Kohle*, 4 Cal. 198 ; 6 Blackf. 299 ; 7 Ib. 593 ; 8 Ib. 194 ; 2 Nevada, 232 ; *Spencer* v. *De Frank*, 3 Iowa, 216 ; 4 Bla. Com. 366 ; 3 Kelly, 459 ; *Cancemi* v. *The People*, 18 N. Y. 136.

2. As to evidence of character, *Felix* v. *The State*, 18 Ala. 720 ; *Fields* v. *The State*, 47 Ala. 603 ; Roscoe's Cr. Ev. 96.

BEN. GARDNER, Attorney General, for the State.

PETERS, C. J. — The offence with which the prisoner was charged in this prosecution is the very grave crime of having carnal knowledge of a female under the age of ten years. Rev. Code, § 3663. The defendant was convicted on the trial in the court below, and sentenced to be hung on Friday, the 22d day of May, 1874, which day is now passed ; and the execution of the sentence was suspended, for and until sixty days after the commencement of the then next ensuing term of this court.

[1] The reporter does not believe that the opinion in this case was intended to change the settled rule of law, as laid down in the several cases cited, and he has therefore made the head-note conform to those cases, and not to the language of the opinion. — REP.

Rev. Code, § 3917. The defendant below brings the case to this court.

The charge in this case involves the life and liberty of the accused. The right to life and to liberty are always regarded by the courts with the greatest tenderness and care. They are to be favored. How is this to be done? Certainly by a most liberal construction of all laws made for the trial of persons accused of offences which are punished by a forfeiture of liberty, or with death. Actuated by this humane design of the law, in the case of *Bell & Murray* v. *The State*, at the January term of this court in 1873, it was settled that, " on the trial of a felony, the defendant's right to the peremptory challenge of a juror is to be kept open *until* the juror is sworn." The bill of exceptions in this case — and it is by this that this court must be governed — shows that " twelve jurors had been drawn, and accepted, as they had been respectively put upon the defendant, and had taken their seats in the jury-box." Two of these jurors were then challenged peremptorily, and the challenges were allowed, and their places were supplied by others from " the special *venire*." The court then asked the accused " if he was now satisfied?" This was before any juror had been sworn. The accused then responded to the inquiry of the court in these words, " I have nothing to say at present." This inquiry and answer were twice repeated. The court then directed the clerk to swear the jury, and eight jurors were sworn without objection. Then the clerk proceeded to swear Thomas J. Mayfield, who was one of the four remaining of those seated in the jury-box as above said, but who had not been sworn. As Mayfield rose from his seat to be sworn, the defendant challenged him peremptorily. His peremptory challenges were not exhausted. The court refused to allow the challenge, and put the juror upon the prisoner in spite of his objection. This was excepted to and made a part of the record. In this the court erred. Evidently, neither the court, nor the accused, understood the mere seating the jurors in the jury-box who had been drawn to be a final acceptance; because two of them were permitted to be challenged, and removed from the jury, after this; and other persons were selected in their stead, apparently as a matter of course. This would not have been done, had it been understood and intended, by such practice, to have closed the opportunity to exert the right of challenge. Then, the practice thus far was not intended to be construed as a waiver of the right of challenge. And the further answer of the accused to the inquiry of the court, " I have nothing to say at present," was not an absolute waiver of the further right to challenge. His subsequent objection shows that he did not so intend it. If he did not, he should not to be held

to be bound by it, in so delicate and important a charge as that urged against him in the prosecution.

The Code directs how the jury shall be selected for the trial of capital offences; but it does not prescribe the manner and time of making the challenges allowed by law. Rev. Code, §§ 4177, 4178. Doubtless this was omitted because there was already a sufficient form for this purpose in use at common law, or that which had been derived from the English practice. Archbold, in his work on Criminal Procedure, lays down the practice to be this : " Upon a full jury appearing, the prisoners who have been arraigned being at the bar, the clerk of the arraigns at the assizes, or the clerk of the peace at sessions, in cases of treason and felony, addresses the prisoners thus: ' Prisoners, these good men, who shall now be called, are the jurors who are to pass between our Sovereign Lady the Queen and you, and upon your (*respective*) trials ; if therefore you (or *either of you, or any of you*) would challenge them, or any of them, you must challenge them as they come to the book to be sworn, and before they are sworn, and your challenge shall be heard.' " 2 Archb. Cr. Pl. (Waterman's ed.) p. 162, top. This formula, changed so as to insert " The State of Alabama " in lieu of the words " our Sovereign Lady the Queen," would suit our own practice ; but it is not necessary that it should be used. It, however, shows that the right of challenge is to be kept open until the juror is sworn, or the oath or affirmation is tendered to him. Under the rule thus shown, a proper practice would be this : After the accused is arraigned, and the jurors summoned to try him have been called into court, to draw one as required by the statute, and, if he is not challenged by the State, or by the prisoner, he should be sworn, and put in the jury-box, under the charge of a bailiff of the court; then, a second name of the jurors summoned should be drawn, and, if not objected to, he should be sworn as before; and so proceed with the selection of one juror at a time until the jury is complete. 2 Archb. p. 162, *supra ;* Rev. Code, §§ 4177, 4178.

2. The defendant in the court below, during the trial, asked a witness whether he knew the " general character " of the accused. The witness answered, " I do." He was then further asked, " What is it ? " The court then said to the defendant, " Ask him " (the witness) " whether it is good or bad." The defendant declined to modify his question. After this, the court told the defendant to " Go on." Thereupon the defendant repeated his question as at first propounded, and the court said to the witness, " Answer it, good or bad." The counsel for the defendant then objected " to the court's instructing the witness how to answer the question." On this, the court " ruled the question out," without the same having been answered by

[Prewitt v. State.]

the witness. To this ruling the defendant excepted. The question was not improper, as asked by the accused, and the court erred in ruling it out without allowing it to be answered.

3–4. It is only necessary further to notice the refusal of the court to give the second charge asked by the defendant below. It was in these words : " Good character is admissible in this case, to generate a reasonable doubt." Abstractly, this was a proper charge. It is the settled doctrine of this court, that where a doubt exists on the other proof as to the guilt of the accused, previous good character is competent evidence to generate a doubt of his guilt. *Felix* v. *State*, 18 Ala. 720 ; *Dupree* v. *State*, 33 Ala. 380 ; *Harrison* v. *State*, 37 Ala. 154 ; *Hall* v. *State*, 40 Ala. 698. But, in this case, there was no evidence whatever of character, good or bad. The charge was, therefore, abstract, and it was properly refused. 1 Brickell's Digest, p. 340, § 64, cases there cited.

For the errors above indicated, the judgment of the court below is reversed, and the cause is remanded for a new trial. In the mean time, the defendant (said Felix Drake) will be held in custody until discharged by due course of law.