The grand jury of Mobile County returned an indictment against the appellant, Urias Dees, charging him with murder in the first degree. Appellant entered a plea of not guilty. A jury found the appellant guilty of murder in the first degree and *Page 966 
fixed his punishment at life imprisonment. The trial court duly sentenced the appellant to life in the penitentiary.
The appellant filed a motion for a new trial, the court denied said motion and appellant appeals to this court. The appellant was present at all proceedings in the trial court, represented by court-appointed counsel, and is so represented in this court. This appeal was submitted to this court on briefs.
The appellant, in his brief, contends that the trial court erred to his prejudice when it denied his motion to exclude the State's evidence on the grounds that it was insufficient to sustain a conviction, and in denying his motion for a new trial based on the insufficiency of the evidence to sustain a jury verdict of guilty of murder in the first degree.
The State's evidence tended to prove that the appellant and his wife, Mary Dees, the deceased, had been married and lived together for approximately thirty-two years, until about a month before November 5, 1977. On or about October 1, 1977, the appellant gave the deceased a rather severe beating and, as a result, the deceased left her home and refused to return, except on one occasion to get her clothing.
The appellant, through his daughter, requested that the deceased return to their home and continue to live with him. This she refused to do, and filed a divorce suit against the appellant and had a restraining order issued against him on October 26, 1977, ordering him to stay away from her. After the deceased left the appellant, she started living with another man.
The appellant knew that the deceased worked at O'Bannon's Sandwich Shop located in Mobile County, Alabama. It was also shown that appellant had a limp in his walk that was caused by an injury to his right leg.
Prior to November 5, 1977, the appellant had made the statement to his nephew that "Mary had left him and he might have to kill her."
On Friday night, November 4, 1977, at approximately 7:00 or 7:30, the appellant went to the home of the deceased's cousin and got his twelve-gauge automatic shotgun, which he had left there about two weeks before. On that night, while the appellant was in the home of his wife's cousin, he made the statement that his wife had a young boyfriend and that she would not have long to live.
The State's evidence further tended to prove that the appellant was in Mobile, Alabama, with State's witness, Richard Puckett, during the night of November 4th and until approximately 5:30 A.M., November 5, 1977. During that time, the appellant told Puckett several times that he was going to shoot his wife, Mary.
He stated that he was mad at her because he had found her with another man. Appellant said that he and his wife had been married a long time but that she was taking him for everything he had, which was the reason that he was going to kill her. The appellant showed Puckett some twelve-gauge shotgun shells, that he said fit the gun he had.
The appellant was wearing a short-sleeved shirt, with different colors on it, and blue pants, when he left that morning, about 5:30, in his Plymouth automobile. Appellant's car was identified as State's exhibits 11, 12, 13 and 14, which are pictures of an automobile. Appellant's car was a 1968 Plymouth two-door, with a white top and faded dark gray paint.
The State's evidence also tended to prove that, sometime prior to November 5, 1977, the appellant had shot at the deceased and his grandson with a shotgun, but did not hit either of them.
The State's evidence also showed that, on November 5, 1977, in the early morning hours, a State witness, Mrs. Shirah, an employee of O'Bannon's Sandwich Shop, came to the shop to go to work. When she got there, she found that a hole had been shot through the front door and that the lock on the door had been shot. There were two shell casings lying on the sidewalk, and the window had been broken. The deceased's car was parked nearby. *Page 967 
A few minutes after Mrs. Shirah arrived at the shop, Mrs. Webb, another employee arrived, around 6:35 A.M. The deceased usually arrived at the shop before Mrs. Webb or Mrs. Shirah.
The police were then called to O'Bannon's Sandwich Shop. When Officer Lundy of the Mobile Police Department arrived at the sandwich shop at approximately 7:00 A.M., he found Mrs. Webb and Mrs. Shirah on the scene. He looked in the back of the shop, and saw the deceased lying on the floor in the back of the shop in view from the front door. He went to the front door and saw two holes in it, one of which was near the middle of the door and another in the door knob.
The door was locked so he kicked it open, went in and found the deceased lying in a pool of blood. She appeared to be dead.
Officer Lundy called for an ambulance and secured the scene. There was blood just inside the door of the shop. The blood appeared to start at the front door and lay in a path to the back door. The track of blood appeared to have gone into the office, where there was a large pool of blood in a chair at the desk. The office telephone was off the hook and there was blood on it. The track then came out of the office and stopped where the deceased was lying on the floor.
Officer Lundy identified, on a picture of the scene, the location at which the gun shell had been found.
The State's evidence also tended to prove that the State's witness, Mr. Rodgers, an employee of a 7-11 store, located next to O'Bannon's Sandwich Shop, was on duty at approximately 6:05 A.M., on November 5, 1977. At that time, he saw a car drive up in front of the 7-11 store, turn into a little road in front of the store, and park.
A man got out of the car with a shotgun or a rifle and went over to the sandwich shop. In about fifteen seconds, he heard two gunshots, and after a little while the same man walked back to his car and drove off.
According to Rodgers, the color of the man's hair was either white or gray and he had a limp. He was a white man about sixty-two years of age. The car which the man arrived in was the same car as that shown in State's exhibits 11, 12, 13 and 14. He stated that he saw the appellant in front of the store that morning carrying a gun.
The State's evidence also showed that, early in the morning of November 5, 1977, the State's witness, Mrs. Glass, was seated in a pickup truck in front of the 7-11 store and saw an elderly, white, short, and stocky man with light-colored hair, carrying a long gun, walking funny, as if he was in a hurry or limping, go to his car, get in and drive off. She identified his car as the car in State's exhibits 12 and 14. The man was wearing a light short-sleeved print shirt and dark pants.
The State's evidence further tended to prove that the State's witness, Mr. Jackson, a resident of Mississippi, was acquainted with the appellant, had seen him near Tanner's Grocery on Natchie Road on November 5, 1977, and had helped him fix a fan belt on his car because the car had been running hot. Jackson identified appellant's car, from a picture shown him by the prosecution, as the same car which he had helped to fix.
Another State's witness, Sgt. Beadnell of the identification division of the Mobile Police Department, was present at the scene of the alleged crime on the morning of November 5, 1977, made photographs of the area, and picked up physical evidence which he found at the scene. Approximately five feet south of the main door, he picked up two twelve-gauge shotgun shells, which were number one buckshot. From the sidewalk he picked up scrapings of the lock and the door. He removed pellets from the lock, from the door area and from the floor inside, as well as several pellets that went through the deceased's arm.
The State's evidence further tended to prove that wading and buckshot from a twelve-gauge shotgun shell was found in the sandwich shop, and that buckshot pellets were removed from the body of the *Page 968 
deceased. Three multi-colored shirts, two short-sleeved and one long-sleeved, were found on the back seat of the appellant's car when it was located in a garage in Theodora, Alabama.
The State's evidence also showed that the deceased was shot in the left arm. The arm was almost severed over an area of about six inches, in the middle third of the biceps, with "shaggy" skin at the edge. One lead pellet was found in the deceased's arm, the humerus was shattered and only fragments of the bone remained in the middle third of the arm. The cause of death was declared to be a gunshot blast to the arm, the destruction of the arm and loss of blood.
When the State rested its case, the appellant moved to exclude the State's evidence on the grounds that the evidence did not meet the full measure of proof which the law requires. This motion was denied. The appellant rested his case without presenting any evidence on his behalf. The appellant filed a motion for a new trial on the grounds that the State's evidence was insufficient to sustain the jury's verdict. This motion was denied and the appellant appeals to this court.
In a criminal prosecution, when circumstantial evidence is relied upon by the State, and is such as to produce a conviction of the defendant's guilt upon the juror's mind, beyond a reasonable doubt, it is as much the jury's duty to find a verdict of guilty as though the evidence had been positive and direct. Hall v. State, 40 Ala. 698; Avery v.State, Ala.Cr.App., 363 So.2d 1036; Kontos v. State, Ala.Cr.App., 363 So.2d 1025; Brown v. State, Ala.Cr.App.,331 So.2d 820; Toosom v. State, 56 Ala. App. 613, 324 So.2d 327.
We hold that the State's evidence was sufficient to warrant the trial judge in submitting the question of appellant's guilt to the jury and to sustain the jury's verdict of guilty of murder in the first degree. The court did not err to the prejudice of appellant by overruling his motion to exclude the State's evidence, and his motion for a new trial.
As provided by § 12-22-240, Code of Alabama 1975, we have searched the record for any errors prejudicial to the appellant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by the Honorable JOSEPH J. MULLINS, a retired Circuit Judge, serving as a Judge of this court under the provisions of § 6.10 of the New Judicial Article (constitutional Amendment No. 328). His opinion is adopted as that of the Court. The judgment is hereby affirmed.
AFFIRMED.
All the Judges concur.